**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) LARRY W. THOMAS and ) <br> (2) JUDITH A. THOMAS, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> vs. ) <br>  ) <br> (1) FARMERS INSURANCE ) <br> COMPANY,  INC., ) <br>  ) <br> Defendant. ) | Case. No. 16-CV-17-TCK-TLW |

**DEFENDANT FARMERS INSURANCE COMPANY, INC.'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant Farmers Insurance Company, Inc. ("FICO") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, replies to Plaintiffs' Response [Doc. # 48] to FICO's Motion for Summary Judgment as to both of Plaintiff's causes of action, for breach of contract and bad faith. [Doc. # 38].

**RESPONSE TO PLAINTIFFS' INTRODUCTION**

Plaintiffs' Introduction is contradicted by the undisputed facts. FICO did not "disregard" Plaintiffs' word "at every turn." [Doc. # 48, p. 4]. After inspecting the property, FICO promptly hired an engineering firm to investigate and evaluate Plaintiffs' claim, and then considered the reports of three other engineering firms. It was Plaintiffs who "disregarded" the findings of their own engineers, who did not find earthquake damage. Plaintiffs may believe there was "obvious structural damage caused by the earthquake" [*id.*], but it was certainly not obvious to the licensed engineering firms. Further, while Plaintiffs are correct in stating that the earthquake's epicenter was north of Enid, Oklahoma [*id.*], that is not the whole story. The earthquake was north of Enid by 70 miles as the crow flies, and was over 120 miles away from Plaintiffs' property. The resulting

report by the United States Geological Survey, based upon scientific data recorded by seismometers, classified the earthquake's potential for causing damage in the area of Plaintiffs' home as "none."

## ARGUMENT AND AUTHORITIES

I. **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF FICO ON PLAINTIFFS' BAD FAITH CLAIM BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT A LEGITIMATE DISPUTE EXISTED REGARDING PLAINTIFFS' CLAIM.**

While FICO will address Plaintiffs' statement of 75 "disputed facts" below, the undisputed **material** facts indicate that a legitimate dispute as to coverage exists, and thus no bad faith claim may lie as a matter of law. Very recently, the Tenth Circuit reaffirmed the standard to be used in determining whether to grant summary judgment on a bad faith claim: "An insurer is entitled to summary judgment on a bad faith claim if it acts in accordance with a legitimate dispute concerning coverage, and the insured fails to produce additional evidence of bad faith to support sending the issue to the jury." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 2017 WL 2179110, at *2 (10th Cir. 2017). *Hayes* cites *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760 (Okla. 1984); *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993), and *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117 (10th Cir. 2012), all for the basic proposition that "A *Christian* cause of action [for bad faith] will not lie where there is a legitimate dispute." *Manis*, 681 P.2d at 761.

Plaintiffs do not dispute that in his December 16, 2014 report, engineer William Ford stated that the damage to the home "was not consistent with the type of activity normally associated with earthquake activity . . . ." [Doc. # 38 at Fact 8; Doc. # 48 at Response Fact 8]. Plaintiffs do not dispute that engineer Michael Herndon, who was retained by Plaintiffs themselves, stated in his report that "there is no significant evidence of earthquake damages . . . ." [Doc. # 38 at Fact 16; Doc. #48 at Response Fact 16]. Plaintiffs also do not dispute that engineer Roger Palmer, who

2

was also retained by Plaintiffs, stated in his report that "the damage . . . appeared to be primarily from the extreme moisture variation . . . and it appeared that the primary cause of the extreme moisture infiltration was from a plumbing problem beneath the utility room..." [Doc. # 38 at Fact 20; Doc. # 48 at Response Fact 20]. All of these reports were issued by licensed engineers and considered by FICO during its investigation of Plaintiffs' claim. [Doc. # 38 at Facts 6-8, 15-16, 20-22, 30; Doc. # 48 at Response Facts 6-8, 15-16, 20-22, 30]. Further, it is undisputed that an engineer from Knox Inspection Services, when retained by Plaintiffs to specifically evaluate the home for structural damage, never even mentioned the possibility of damage to the home caused by earthquake. [Doc. # 38 at Fact 31; Doc. # 48 at Response Facts 31].

Plaintiffs also do not dispute that it was reasonable for FICO to consider the report of Plaintiffs' engineer at Herndon Engineering (which stated, "there is no significant evidence of earthquake damage"), and they AGREE that it was reasonable for FICO to rely on experts in the in the field to assist in its evaluation of the causation of the damages. [Doc. # 38 at Facts 11, 16, 18; Doc. # 48 at Response Facts at 11, 16, 18].

Simply put, once all of the clutter is removed, Plaintiffs claim an earthquake caused damage to their home. The undisputed facts establish that multiple engineers, including several hired by Plaintiffs, found no significant evidence of damage caused by earthquake. And Plaintiffs have admitted that it was reasonable for FICO to rely on these engineers in making its decision. Accordingly, no bad faith claim can lie against FICO as a matter of law, since a legitimate dispute clearly exists concerning whether certain damages to Plaintiffs' home were caused by earthquake.

Moreover, it has never been bad faith for an insurer to disagree with an insured, even to the point of litigating a dispute, and even if the insured's position is ultimately established as the correct one. Resort to a judicial forum by an insurer is not per se bad faith or unfair dealing on the

3

part of the insured regardless of the outcome of the suit. *Christian v. American Home Assurance Co.*, 577 P.2d 899, 905 (Okla.1977). *See also Andres v. Oklahoma Farm Bureau Mut. Ins. Co.*, 290 P.3d 15, 17 (Okla. Civ. App. 2012). Thus, regardless of how this Court determines the breach of contract cause of action, there is no question that a legitimate dispute existed at the time FICO made its claim decision, as multiple engineers - even those retained by Plaintiffs - agreed with FICO, and Plaintiffs have admitted such reliance was reasonable. Plaintiffs' claim for bad faith is untenable as a matter of law, and summary judgment must be granted in FICO's favor on this claim based upon the existence of a legitimate dispute.

**II.   THERE IS NO EVIDENCE THAT FICO ACTED WITH MALICE, GROSS NEGLIGENCE, OR EVIL INTENT. THUS, PLAINTIFFS' PUNITIVE DAMAGES REQUEST FAILS AS A MATTER OF LAW.**

Contrary to Plaintiffs' argument, the instant case most definitely does not involve "a similar course of conduct" compared to that in *Newport v. USAA*, 11 P.3d 190 (Okla. 2000). [Doc. # 48, p. 21]. *Newport* concerned "low ball" offers that were below the amount the insurance company's estimates of damage. *See Price v. Mid-Continent Cas. Co.*, 41 P.3d 1019, 1021 (Okla. Civ. App. 2002); *CR Operating Co., Inc v. Great Am. Ins. Co. of New York*, 2013 WL 12091068, at *8 (W.D. Okla. 2013). Plaintiffs have never made any such assertion. Further, *Newport* warns that an award of punitive damages requires a showing of evil intent, and that even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, submission of the issue of punitive damages to a jury may be improper. *Newport*, 11 P.3d at 204. [1]

---

[1] There is no evidence of evil intent, and, as explained in FICO's Motion for Summary Judgment, the record contains a good deal of evidence of FICO's *good* faith, from an inspection less than a week after first receiving notice of Plaintiffs' claim, to promptly hiring an engineer to inspect the property, to repeatedly considering the information provided to it by Plaintiffs. In addition, without being obligated to do so under the Policy, FICO paid some of the bills incurred by Plaintiffs, and ultimately found coverage once it was determined it was "possible" that certain

4

Finally, there is nothing in the record supporting Plaintiffs' statement that FICO's adjuster "said he would not accept an earthquake claim", if Plaintiffs are implying FICO would never pay a claim. In fact, FICO paid an earthquake claim in this case once an engineer said that in some "minor unidentifiable way" an earthquake could have contributed to the damage (Doc. # 38-17, p. 7). It simply didn't pay as much as Plaintiffs believe they should have received.

**III.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE THE UNDISPUTED EVIDENCE REVEALS FICO PROVIDED COVERAGE FOR THE ONLY DAMAGE THAT *MAY* HAVE BEEN CAUSED BY AN EARTHQUAKE.**

Plaintiffs' Response in opposition to FICO's Motion for Summary Judgment as to their breach of contract claim consists of a single paragraph in which Plaintiffs assert that Judith Thomas offered "eyewitness testimony" that an earthquake occurred and that "Mrs. Thomas' credibility is a jury question, and thus, summary judgment is inappropriate." [Doc. # 40, p. 20]. This statement would be true if the issue was whether an earthquake occurred, but that is not the issue. The issue is whether Plaintiffs' damages were caused by an earthquake and were covered under the insurance policy. Judith Thomas is qualified to testify about what she observed, but she is not qualified to testify as to whether an earthquake caused damages covered by the Policy beyond what FICO paid. If it was otherwise, then summary judgment would never be granted as long as a party stated, "I believe the damages were covered."

**IV.   PLAINTIFFS HAVE NO INSURANCE CLAIM FOR DAMAGE CAUSED BY MOLD.**

Plaintiffs' Response [Doc. # 48, p. 20] does not challenge FICO's argument that the plain language of the Policy does not provide coverage for mold. FICO raised this point because even though Plaintiffs' Petition does not allege or make any reference to damage due to mold, Judith

---

damage could have been caused by *an* earthquake, not even the one which Plaintiffs claim. All these undisputed facts are indicative of good faith.

Thomas stated in discovery that her damages included those caused by mold. [Doc. # 48-1, p. 53]. Where a contract is unambiguous (as here), "there is no reason to look beyond the plain language of the contract to enter judgment as a matter of law." *Citgo Petroleum Corp. v. Occidental Chem. Corp.*, 2001 WL 34615482, at *2 (N.D. Okla. 2001), aff'd, 29 F. App'x 525 (10th Cir. 2002).

V. **PLAINTIFFS' "FACTS" DO NOT PREVENT SUMMARY JUDGMENT IN FAVOR OF FICO.**

    a. **FICO's Response to Plaintiffs' Statement of Disputed Facts**

Plaintiffs' Statement of Disputed Facts stretches ten pages and includes 75 different "facts" which Plaintiffs assert preclude summary judgment in FICO's favor. However, Plaintiff only cites to 12 of these "facts" in disputing FICO's facts, and it is unclear exactly how many of the 63 remaining facts are material to the issues in this case. These are immaterial facts and while none of these "facts" change the undisputed material facts above evidencing a legitimate dispute as to coverage, FICO will nevertheless address these "facts."

*i. Judith Thomas Deposition Testimony*

Judith Thomas testified as set forth in Plaintiffs' statement of disputed facts numbered 1-5, 7-12, 14-18, 20, 24,[2] 50-52, 63.[3] Nevertheless, Mrs. Thomas' self-serving and conclusory statements cannot be used to dispute material facts, and Mrs. Thomas' "say-so" cannot contradict the reports of multiple engineers finding no earthquake activity [*See* Doc. # 38]. FICO denies Plaintiffs' disputed fact number 27, since the cited materials do not support that there were no plumbing leaks as of December 23, 2014[4], nor do they support that Young "directed" Mrs. Thomas to file a claim for water damage. Fact 30 sets forth Mrs. Thomas' belief, and C-It-All's invoice

---

[2] "Repeatedly' is not supported by the materials cited.
[3] The depositions of William Ford and Michael Young are to be set in the next few weeks.
[4] Indeed, Roto-Rooter ran a camera through certain drain lines, not all lines. [*See* Dkt. # 48-1 at p. 72].

6

does not support this "fact." [Doc. #48-7, p. 11]. The materials cited in fact 35 do not support that there was no crack in the foundation at that time, only that Ms. Thomas claims not to have seen one.

### ii. Engineering Reports

With respect to Plaintiffs' "facts" concerning engineering reports, FICO admits the contents of the following: 12-13, 21, 28, 45-47,[5] 55-57 (subject to response to fact 54, below), 60-62, and 69-70. With respect to fact 29, it is admitted that C-It-All found no leaks in the water supply lines it tested, but C-It-All did find a leak from the water heater. [Doc. # 48-7 at 11].[6] FICO admits facts 36-38, that Herndon suggested more plumbing tests to determine the actual cause of the damage, but Herdon concluded that "[t]here is no significant evidence of earthquake damage . . . the house has experienced settlement . . . . " [Doc. # 48-8 at 6]. With respect to facts 65-68 and 71-75, FICO admits that this is what is stated in the post-litigation reports from engineer Hall, but these conclusions concerning earthquake damage are based on interviews with Judith Thomas at least two years after the loss: "after interviewing the owner's [sic], it is believed that the earthquakes caused the damage detailed in this report." [Doc. # 48-25, p. 30]. For fact 41, FICO admits that Judith Thomas hired ALD, but this evidence does not support it was as a result of Herndon's report. For fact 44, FICO admits that Judith Thomas hired CDR, but otherwise denies this "fact," since CDR found no evidence of damage caused directly by earthquake, and instead opined the settling was primarily from extreme moisture variation caused primarily by a plumbing problem. [Doc. # 48-10 at p. 4; *see also* Doc. # at Fact 20]. For fact 49, FICO admits

---

[5] Ford and Herndon concluded more testing was needed to determine the actual cause of the damage, but both agreed the actual cause was not earthquake.

[6] Both Mr. and Mrs. Thomas testified they observed water dripping in the utility closet in July of 2014. [*See, e.g.,* Doc. 38-2 at p. 4-5, 22:24-23:25].

that payment was issued by FICO. Facts 58-59 are admitted in that Ford inspected, but are denied as to "continuing" damage, as the document speaks for itself. [Doc. # 38 at Fact 28]. Fact 64 is admitted to the extent that Knox was retained to perform a mold spore test, but is denied to the extent this report suggests certain damages were caused by earthquake, since the report states "the structural damage and cosmetic damage present in the home are beyond the scope of this inspection . . . ." [Doc. 48-19 at p. 13]. Indeed, the Knox report dated November 2, 2015, which was completed pursuant to an actual structural inspection, never even mentions the possibility of earthquake damage. [Doc. # 38 at Fact 31; Doc. # 38-19].

Facts 6 and 7 are disputed to the extent that the cited materials do not support that Porter was not able to change the A/C coil as a result of the slab. Fact 22 is denied since Roto Rooter did not test all the lines in the home. [*See* Doc # 48-1 at p. 72]. Fact 23 is denied since this does not evidence there were no leaks in the drain lines, nor does this show consistent consumption. For fact 34, there is no evidence cited to support that the hot water tank did not leak in November. Fact 39 is denied to the extent this suggests there was earthquake damage, since Herndon's report opines "there is no significant evidence of earthquake damage," and that additional investigation was needed to determine whether the cause was drought damage, a plumbing leak, or long-term consolidation of fill. [Doc. # 48-8 at p. 5-6]. Fact 40 is denied as FICO paid for plumbers and an engineer. [*See, e.g.*, Doc. # 38 at Facts 7, 13, 17]. Fact 42 is denied as nothing in the cited materials suggests Plaintiffs "now" had a separation. Fact 48 is denied as misrepresenting the engineering reports, since each found no evidence of damage caused directly by earthquake and suggested additional testing was needed to determine the actual cause of the damage [Doc. # 48-8 at 5-6; Doc. # 38, facts 15, 20-22; Doc. # 48-10 at p. 9-10]. Fact 54 is denied as there is no evidence attached to support the fact these documents were provided to FICO. Further, document "a" does

8

not show 9 fault lines "in/around" the Thomas home, and nothing in documents "b" or "c" shows the Thomas home was not on clay soil. In fact, the report from Plaintiffs' expert Dr. Scott states that the Thomas home was on soils which contained up to 28 percent clay [*See* Doc. 48-25 at p. 32-33]. In addition, nothing in document "d" shows an increase in earthquake intensity at the Thomas home nor does the FEMA checklist prove the Plaintiffs suffered earthquake damage to their home.

### *iii. Miscellaneous*

FICO admits facts 26, 31-33, and 53. With respect to facts 19 and 25, FICO admits that Young temporarily closed the claim file pending the receipt of Ford's engineering report, which would not be received for a few weeks due to Mrs. Thomas' request that an inspection not occur until after December 13th. FICO further states that Young informed Mrs. Thomas thereof, and Young reopened the file upon the receipt of the engineering report. These facts, like many others listed by Plaintiffs, are not material. [Doc. 48-1 at p. 73; Doc. # 48-7 at p. 4].

### b.      Plaintiffs' Responses to FICO's Statement of Material Facts

With respect to Plaintiffs' Responses to FICO's Statement of Material Facts [Doc. # 48 at 16-20], FICO will not address Plaintiffs' responses to the extent they have been addressed above (e.g., facts 12, 15, 16-19, 27, 31, etc.). Concerning Plaintiffs' Responses to facts 1-3, Plaintiffs cite nothing to support their "ambiguity" references, Plaintiffs' own Petition asserted the earthquake was a 3.6 magnitude [Doc. # 2 at ¶¶ 7-9], and Plaintiffs cite no evidence that their one-story home was a "large structure" such as a bridge, tall building, or storage tank as referred to in the USGS disclaimer.

Concerning Plaintiffs' responses to facts 3-4, FICO admits the USGS has a website where any individual can self-report in an unverified manner what intensity that individual believes he or

9

she felt as the result of an earthquake. Nevertheless, an intensity of II-III, with the potential of causing no damage - as referred to in FICO's facts - was measured scientifically by seismometers and was not based upon unverified submissions of what individuals believe was felt. [Doc. # 38 at Fact 3]. Notably, Plaintiffs do not dispute that as a result of the earthquake, no pictures fell off their walls, there were no broken dishes or cracks in the ground, there was no damage to kitchen tiles or bamboo flooring, and there were no problems with their grandfather clock, all of which is consistent with the scientifically recorded intensity of II-III, which is incapable of causing damage. [*See* Doc # 38 at Facts 3-5; Doc # 48 at Fact 5].[7]

Regardless of any of Plaintiffs' foregoing "facts," there is no question that a legitimate dispute existed at the time FICO made its claim decision, because it is undisputed that multiple engineers - even those retained by Plaintiffs - agreed with FICO, and Plaintiffs have admitted such reliance was reasonable.  Plaintiffs' claim for bad faith is untenable as a matter of law, and summary judgment must be granted in FICO's favor on this claim based upon the existence of a legitimate dispute.

## CONCLUSION

WHEREFORE, Defendant Farmers Insurance Company, Inc. respectfully moves this Court for summary judgment as to Plaintiffs' claims, and for such further relief as the Court may deem just and equitable.

---

[7] Interestingly, while Plaintiffs question the veracity of the C-It-All report in response to FICO's fact 13, Plaintiffs themselves refer to and rely on this report in their statement of disputed facts [Doc. # 48 at p. 9, facts 28-30]. This is also true for the letter in Plaintiffs' response to fact 14. [Doc. # 48 at p. 10, Facts 31-33].

Respectfully submitted,

*s/ Casper J. den Harder*
Phil R. Richards, OBA No. 10457
Kelsie M. Sullivan, OBA No. 20350
Casper J. den Harder, OBA No. 31536
RICHARDS & CONNOR, PLLP
ParkCentre Building, 12th Floor
525 South Main Street
Tulsa, Oklahoma 74103
Telephone: 918/585-2394
Facsimile: 918/585-1449
Email:  prichards@richardsconnor.com
　　　　ksullivan@richardsconnor.com
　　　　cdenharder@richardsconnor.com

**ATTORNEYS FOR DEFENDANT
FARMERS INSURANCE CO., INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of August, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Kate D. Thompson, Esq. – kate@ctlawtulsa.com
Timothy P. Clancy, Esq. – tim@ctlawtulsa.com

**ATTORNEYS FOR PLAINTIFFS**

*s/ Casper J. den Harder*

11