IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) **LARRY W. THOMAS, and**
(2) **JUDITH A. THOMAS,**

        Plaintiffs,

vs.

     Case No.: 16-CV-17-TCK-TLW

(1) **FARMERS INSURANCE
COMPANY, INC.,**

        Defendant.

---

### PLAINTIFFS LARRY AND JUDY THOMAS' RESPONSE TO DEFENDANT FARMERS INSURANCE COMPANY, INC.'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Kate D. Thompson, OBA #20991
Timothy P. Clancy, OBA #14199
5801 E 41st Street, Suite 710
Tulsa, OK 74135
918-494-0007 (Telephone)
918-515-7555 (Facsimile)
Attorneys for Plaintiffs
Email: kate@ctlawtulsa.com
      tim@ctlawtulsa.com

**ATTORNEYS FOR PLAINTIFFS
LARRY AND JUDITH THOMAS**

# INDEX

TABLE OF AUTHORITIES ................................................................. i

INTRODUCTION ......................................................................... 1

SUPPLEMENTAL FACTS PRECLUDING SUMMARY JUDGMENT .................................. 3

RESPONSES TO DEFENDANT'S SUPPLEMENTAL STATEMENTS OF MATERIAL FACTS ....... 8

ARGUMENTS AND AUTHORITIES ......................................................... 9

I.  THE EARTHQUAKE WAS THE EFFICIENT PROXIMATE CAUSE OF THE DAMAGE TO
   THE THOMAS HOME.............................................................. 9

II.  THE REASONABLE EXPECTATIONS DOCTRINE DOES NOT PERMIT FARMERS
   TO CONTRACT AROUND THE EFFICIENT PROXIMATE CAUSE DOCTRINE. ........... 10

III.  THE REASONABLE EXPECTATIONS DOCTRINE ....................................... 12

IV.  AFTER ACQUIRED EVIDENCE IS IRRELEVANT ....................................... 16

V.  FARMERS' RELIANCE ON *GERLICHER* IS MISPLACED ............................... 17

CONCLUSION............................................................................. 18

# TABLE OF AUTHORITIES

**CASES**

*Aetna Ins. Co. v. Zoblotsky*, 1971 OK 20, 481 P.2d 761......................................14

*Aschenbrenner v. U. S. Fid. & Guar. Co.*, 292 U.S. 80, 54 S. Ct. 590 (1934)..............13

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, 148 P.3d 832..............14

*Broom v. Wilson Paving & Excavating, Inc.*, 2015 OK 19, 356 P.3d 617...................12

*Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105...........................16-17

*Continental Casualty Co. v. Beaty*, 1969 OK 89, 455 P.2d 684..............................14

*Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372.....................................16

*Duensing v. State Farm Fire & Casualty Co.*, 2006 OK CIV APP 15, 131 P.3d 127......11-12

*Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290  (W.D. Okla. 2003).................9-12

*Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, 912 P.2d 861............14-15

*McDonald v. Schreiner*, 2001 OK 58, ¶6, 28 P.3d 574.......................................13

*Nat'l American Ins. Co. v Gerlicher Co., LLC*, 2011 OK CIV APP 94, 260 P.3d 1279....17

*Newport v. USAA*, 2000 OK 59, 11 P.3d 190...................................................16-17

*Pennsylvania Fire Ins. Co. v. Sikes*, 197 Okla. 137, 168 P.2d 1016 (1946)...................9

*Shirey v. Tri-State Ins. Co.*, 274 P.2d 386 (Okla.1954).......................................9-10

*Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, 73 P.3d 865...................................13-15

*Watson v. Farmers Ins. Co., Inc.*, 23 F.Supp.3d 1342 (N.D. Okl. 2014).....................17

*Yaffe Companies, Inc. v. Great Am. Ins. Co., Inc.*, 499 F.3d 1182, 1190 (10th Cir. 2007)...16

Plaintiffs Larry and Judith Thomas hereby submit their *Response to Defendant's Supplemental Motion for Summary Judgment.* The relevant evidence still demonstrates issues of material fact to preclude summary adjudication, particularly when the evidence is viewed in the light most favorable to Plaintiffs. Plaintiffs offer the following:

**INTRODUCTION**

In supplementing its Motion for Summary Judgment, Farmers muddles disputed facts with arguments in an attempt to convince this Court that no issues of disputed facts exist. However, the following material facts are at issue in this case:

Farmers chose not to properly and adequately train and supervise their employees;[1] Farmers did not train its adjuster to have an accurate understanding of its earthquake endorsement to the Thomas' policy;[2] Farmers selected a consulting engineer to inspect the Thomas home without asking if he had any experience inspecting structures with earthquake damage;[3] Farmers withheld from their consulting engineer the fact that Mrs. Thomas was home during the earthquake;[4] Farmers failed to apply the earthquake endorsement to the Thomas' coverage;[5] Farmers chose not to adequately inspect the Thomas home;[6] Farmers denied the Thomas claim for damage to the veneer of the home even though the Thomas's specifically elected the coverage;[7] Farmers chose not to accurately document its claim file;[8] Farmers closed its claim file nine times since the

---

[1] See Plaintiffs' Supplemental Facts 83, 113-117 and 123-125.

[2] See Plaintiffs' Supplemental Facts 83, 113-117 and 123-125

[3] See Plaintiffs' Supplemental Facts 111-113.

[4] See Plaintiffs' Supplemental Facts 111-113.

[5] See Plaintiffs' Supplemental Facts 121-125, 127.

[6] See Plaintiffs' Supplemental Facts 100-102.

[7] See Plaintiffs' Supplemental Facts 125-126.

[8] See Plaintiffs' Supplemental Facts 88-89 and 121.

1

Thomases made their earthquake claim;[9] and Farmers stated that settling was NEVER covered no matter how caused which is contrary to the specific language of the earthquake endorsement.[10]

It is undisputed Farmers refused to apply its own earthquake endorsement.[11] In fact, over three years after the Thomas' made their claim, Farmers never trained Adjuster Michael Young on the proper interpretation and application of the Thomas' earthquake endorsement.[12] It was only when the earthquake endorsement was read to Young at his deposition that he acknowledged settlement was a covered loss.[13]

Famers' Supplemental Brief in Support of its Motion for Summary Judgment is fraught with inaccurate and unsupported statements. First, Farmers' contends on page 1 of their Supplemental Brief that "Hall was the only one of five experts retained by Plaintiffs that actually opined the damages asserted were likely caused by earthquakes under conditions which may be covered under the policy." [Doc. #65, p.1] Knox Inspection Services reported that plumbing leaks and the structural damage were caused from earthquake vibration and reported that the cracks and source of the excessive moisture appear consistent with the observations in the home and corroborates that information." [Doc. #48, Plaintiffs' Fact No. 64] On March 20, 2015, Thomas hired CDR inspections to perform a structural inspection of the home. CDR found earthquake damage to the house. [Doc. # 48, Plaintiffs' Fact No.44] Herndon Engineering stated an opinion could not be rendered with respect to cause and origin of the damage to the home until complete plumbing tests were performed, reviewed and then an additional inspection of the house would be required. [Doc. #48, Response to Defendant's Statements of Alleged Material Facts, No. 16] Dan

---

[9] See Plaintiffs' Supplemental Facts 83.
[10] See Plaintiffs' Supplemental Facts 79, 85 and 122-124.
[11] See Plaintiffs' Supplemental Facts 122-124, 127.
[12] See Plaintiffs' Supplemental Facts 122.
[13] See Plaintiffs' Supplemental Facts 123-124.

Arthur opined that the Thomas home was damaged by the November 12, 2014 earthquake. [Doc. #65, Arthur Expert Evaluation, p.2, Ex. 1]  In fact, Farmers' own engineer, Bill Ford,  opined on August 9, 2015 that the Thomas home sustained earthquake damage.  [Doc. #48, Plaintiffs' Fact No. 58]

Farmers next alleges that "[h]owever, Mr. Arthur is not a geologist, and his opinion does not support Hall's conclusions." [Doc. #65, p.2]  It is immaterial whether or not Mr. Arthur is a geologist.  Mr. Arthur is an expert in the fields of earth sciences, induced seismicity, and related impacts. [Id.]  Mr. Arthur studied and applied the factors to determine in his professional opinion that Mrs. Thomas's "home does in fact appear to have been damaged by the subject seismic event." [Id.]  One of the factors Mr. Arthur relied upon in coming to this conclusion was that  "Mr. Hall noted that the subject damage was consistent with damage caused by a seismic event." [Id.]  Mr. Arthur's report specifically states the following: "Mr. Hall noted in his damage evaluation that the structural damage reported is a result of earthquake activity.  Although Mr. Hall failed to note that relative vulnerability of the home based on its condition, his findings are consistent with Mr. Arthur's findings." [Id. at 9]

### PLAINTIFFS' SUPPLEMENTAL FACTS PRECLUDING SUMMARY JUDGMENT

76. Farmers accepted the Thomas property as an insurable risk based on an underwriting inspection on January 4, 2013. [Farmers' Property Inspection Report, Ex. 1]

77. Farmers own inspection did not show any sign of erosion. [Ex. 1]

78. On the date of loss, Mrs. Thomas inspected the perimeter of her home and there were no signs of erosion to the foundation. [Affidavit of J. Thomas, Ex. 2]

79. Settlement is a covered loss pursuant to the earthquake endorsement. [Doc. #38, Ex. 1, Farmers 839]

80. Structural issues, which may increase the susceptibility of the Thomas home to seismic damage is not excluded under the earthquake endorsement. [Doc. #38, Ex. 1, Farmers 839-40]

81. Farmers' December 23, 2014 denial letter states that the damage to the home "is the result of settling under your foundation." [Doc. #48-7]

82. Farmers' philosophy is to handle every claim based on the policy that is in force at the time of loss. [Michael Young Deposition, 26:25 and 27:1-2 and 4-5, Ex. 3]

83. Young has closed the Thomas' file nine times. [Young, Ex. 3, 137:10-13 and 15-16, *See also* Farmers 33-34, Ex. 4]

84. When Young receives notification of a claim he looks at the policy coverages, endorsements that apply and at prior losses. [Ex. 3, 39:1-11]

85. Farmers gave Young no training on earthquake claims before assigning him the Thomas' earthquake claim to adjust. [Doc. #48-1, Farmers' Answer to Interrogatory No. 10, Ex. 3]

86. Before the Thomas' earthquake claim, Farmers did not send Young to any seminars or any training regarding earthquake claims. [Ex. 3, 31:20-24]

87. Young testified that he documents all claims handling activity in the Farmers' claims system. [Ex. 3, 37:15-21]

88. Young testified to performing his own independent investigation by searching the US Geological Survey website to determine whether an earthquake affected the Thomas' home. [Ex. 3, 69:12-24]

89. However, Young did not record in the claims file his independent investigation on the US Geological Survey website to determine whether an earthquake affected the Thomas' home. [Ex. 3, 72:8-11; 13-15; 19-25 and 73:1, 4-7]

90. While at Farmers, Young handled one or two earthquake claims before the Thomas' claim and Farmers did not pay either claim. [Ex. 3, 43:11-22]

91. The 1-2 previous earthquake claims Farmers' denied involved interior cracking in the drywall and exterior cracking to elevation. [Ex. 3, 66:15-24]

92. Young has handled approximately five earthquake claims since the Thomas' earthquake claim. [Ex. 3, 47:11-23]

93. Some of the other five claims Young handled also had the earthquake endorsement like the Thomas's. [Ex. 3, 47:24-25 and 48:2-3]

94. Farmers refused to cover any of the other five earthquake claims. [Ex. 3, 48:4-5]

95. Young found Mrs. Thomas to be cooperative. [Ex. 3, 46:10-12]

96. Mrs. Thomas complied with all of Young's requests for information. [Ex. 3, 46:13-15]

97. Young believed Mrs. Thomas. [Ex. 3, 47:1-2]

98. There are no policy provisions that Mrs. Thomas failed to comply with. [Ex. 3, 47:3- 6]

99. Young attempts to close out each claim onsite when he first meets the insured. [Ex. 3, 39:18-21]

100. Young chose to only inspect the front exterior of the Thomas home. [Ex.3, 64:10-13]

101. Young failed to walk around or inspect the back or sides of the Thomas home. [Ex. 3, 64:16-18]

102. Young does not know why he failed to inspect the sides or back of the home. [Ex. 3, 64:19-20]

103. Young noted the damage to the home was not from earthquake but did not walk around the exterior of the home. [Ex. 3, 64:16-18, 109:22-25 and 110:1-3]

104. Young relied on his experience during his inspection of the Thomas home to determine the difference between earthquake and settlement even though he handled only 1-2 earthquake experiences before the Thomas' earthquake claim. [Ex. 3, 110:17-23]

105. Each of Farmers' correspondences to the Thomases informing them that their loss was not covered, failed to mention the fact that their earthquake endorsement provided coverage. [Doc. #48, Ex. 9, 12, 20 and 34]

106. Young now works for Farmers as a nationwide catastrophic loss adjuster and has not handled any earthquake claims in this position. [Ex. 3, 22:18-20; 23:25 and 24:1-2]

107. When Young hires an engineer to assist him with his investigation he chooses whomever he wants from a list of engineers Farmers provides to him. [Ex. 3, 74:22-25 and 75:1-6]

108. Young tells his supervisor he needs an engineer and his supervisor assigns the engineer to the claim. [Ex. 3, 76:17-25 and 77:1-2]

109. Bill Ford was hired by Farmers to perform a structural inspection of the Thomas' home. [Ex.3, 77:24-25]

110. Young used Bill Ford before the Thomas' claim. [Ex. 3, 78:1-2]

111. Young had no idea if Bill Ford had any experience with earthquake damage before hiring him to inspect the Thomas home. [Ex. 3, 78:21-24]

112. Young never asked Bill Ford if he had any experience inspecting earthquake damage. [Ex. 3, 82:20-22]

113. There is nothing in the claim file that states that Young told Bill Ford that Mrs. Thomas was home when the earthquake occurred. [Ex.3, 109:11-13]

114. Young alone made the decision to deny the Thomas' earthquake claim. [Ex. 3, 97:3-7]

115. Denying a claim is Young's decision. [Ex. 3, 98:13-14]

116. Young's supervisor testified that in late 2014 and 2015 Young had partial authority to deny some claims and full authority to deny other claims. [Greg Ward Deposition, 34:15-20, Ex. 5]

117. Young did not have full authority to deny the Thomas claim. [Ex. 5, 34:21-23]

118. Young has authority to settle a property claim with a dollar limit of $25,000. [Ex. 3, 152:16-21]

119. Young's investigation in the end—August 2015—revealed that the Thomases had earthquake damage in the utility room and all other damage to the home was due to settlement which Farmers' excluded. [Ex. 3, 97:15-19]

120. Young sent two reports from engineers the Thomases hired to Bill Ford and he called Bill Ford to discuss the reports, but the content of that conversation is not in the claims file. [Ex. 3, 101:15-25 and 102:1-15, 17-18]

121. No one knows the details of Young's conversation with Bill Ford because Young did not record it in the activity notes. [Ex. 3, 103:10-13]

122. Young testified on September 22, 2017, which is nearly 3 years after the Thomases made their earthquake claim, that per the policy, settling is NEVER covered no matter how caused. [Ex. 3, 119:5-8]

123. The endorsement provides:

> For purpose of this **earthquake** endorsement only, **SECTION I – PROPERTY, UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE** is modified as follows:
> 
> ***
> 
> **B. Excluded Causes of Loss or Damage,** the following excluded caused of loss or damage to do not apply to this **earthquake** endorsement:
> 
> 1. **Earth Movement. Earth movement** does not include **earthquake;**
> 29. **Collapse. Collapse** does not include **earthquake;**
> 34. **Movement, settling, cracking, bulging, shrinking, heaving or expanding**. This exclusion does not include **movement, settling, cracking, bulging, shrinking, heaving or expanding** if the result of **earthquake.**

[Doc. #38, Ex. 1, Farmers 839-40] Thus, the exclusions relied upon do not apply when there is earthquake coverage.

124. Upon counsel reading the earthquake endorsement aloud to Young during his deposition, Young stated he was wrong and settling IS covered if caused by an earthquake. [Ex. 3, 119:13-25 and 120:1-16]

125. Young admits to erroneously putting in the Farmers' claim notes that Mrs. Thomas elected not to cover exterior masonry veneer. [Ex. 3, 133:3-116 and *See* Doc. #38, Ex.1, Farmers 840]

126. The Thomas' did elect to cover the exterior masonry veneer. [Doc. Doc. #38, Ex.1, Farmers 840]

127. On August 19, 2015, at 11:48 a.m. during a coverage review the claim file notes state "Earthquakes and settlement an uninsured type of loss, therefore, no coverage applied to coverage A." [Ex. 3, 135:9-25 and 136:1] This is wrong as the policy covers earthquake and settlement.

128. Young admits that the entry regarding "no coverage" is wrong. [Ex.3, 136:2-3]

**RESPONSES TO DEFENDANT'S SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS**

32. Undisputed. Defendant properly quoted part of Mr. Arthur's report.

33. Undisputed. Defendant properly quoted part of Mr. Arthur's report.

34. Undisputed. Defendant properly quoted part of Mr. Arthur's report.

35. Disputed in part. Undisputed that Defendant properly quoted part of Mr. Arthur's report. Farmers inspected the Thomas property before accepting it as an insurable risk and made no comments or concerns regarding erosion around the foundation of the home. [Farmers' Property Inspection Report, Ex. 1] However, Mr. Arthur does not state that there was erosion under Mrs.

8

Thomas' home at the time of the earthquake and does not state that the erosion he visualized was

in existence on November 12, 2014. [Dan Arthur Deposition, 34:24-25; 35:19-25; 36:3-25 and

37:1-3, Ex. 6] Mr. Arthur testified that "for the slab to fall, that it probably wasn't reinforced with

rebar. If it had rebar in there, it wouldn't have fallen." [Ex. 6, 38:8-25 and 39:1-8] Mr. Arthur

further testified that the slab dropped due to the 4.9 earthquake in Conway Springs, KS on

November 12, 2014. [Ex. 6, 30:16-21]

36.      Disputed. Mr. Arthur testified that the USGS is "generally" reliable but that the USGS

makes assumptions. [Ex. 6, 19:18-24]

37.      Undisputed.

### ARGUMENTS AND AUTHORITIES

I.      THE EARTHQUAKE WAS THE EFFICIENT PROXIMATE CAUSE OF THE DAMAGE TO
        THE THOMAS HOME.

The efficient proximate cause doctrine applies only when two or more identifiable
causes, at least one of which is covered under the policy and at least one of which
is excluded, contribute to a single property loss. When the "insured [cause] sets
[one or more excluded] causes in motion in an unbroken sequence between the
insured risk and the ultimate loss ... the insured risk is regarded as the proximate
cause of the entire loss, even if the last step in the chain of causation was an
excepted risk." If the insured successfully demonstrates that the proximate cause of
the loss is covered, the entire loss is covered notwithstanding the fact that an event
in the chain of causation was specifically excluded from coverage.

A review of the pertinent case law reveals that Oklahoma has adopted the efficient
proximate cause doctrine. See *Shirey v. Tri-State Ins. Co.*, 274 P.2d 386, 388-89
(Okla.1954); *Pennsylvania Fire Ins. Co. v. Sikes*, 197 Okla. 137, 168 P.2d 1016,
1019-20 (1946). . .The Oklahoma Supreme Court's most recent pronouncement on
the doctrine came in *Shirey v. Tri-State Ins. Co.* In that case, the court considered a
coverage dispute involving a claim of automobile damage sustained during a
windstorm. See *Shirey*, 274 P.2d at 387. The insured's policy covered losses caused
by windstorms but excluded losses caused by "collision or upset." The damage to
the car was indisputably caused by upset, as the car had flipped over in a ditch.
However, it was clear that the upset resulted from the windstorm. See *Id*. Rejecting
the insurer's argument that the "upset" exclusion precluded windstorm coverage,
the court first cited and then relied on the general rule that "the insured may recover

if the windstorm was the efficient and proximate cause of the damages to the property insured, and it is immaterial that the damage may have been incidentally and indirectly contributed to by other causes expressly excluded from coverage." *Id*. at 388.

*Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1296–97 (W.D. Okla. 2003) (some citations omitted).

In *Kelly*, as here, Farmers seeks to distinguish the *Shirey* case, claiming it only applies where the policy language is similar. This argument was properly rejected in *Kelly*:

[T]he efficient proximate cause doctrine, like all legal doctrines, is applicable in a variety of factual situations. Indeed, the efficient proximate cause doctrine has been described as "the all but universal method used in the United States for resolving coverage issues involving the concurrence of covered and excluded perils." While it is true that certain coverage determinations that are conditioned on the language of the policy are not binding with respect to cases involving different policy language, that rule is simply malapropos in the context of a broadly applicable doctrine of coverage analysis.

*Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1297 (W.D. Okla. 2003) (citations omitted). Farmers' second argument is premised on its mischaracterization of settling as a "loss" as opposed to a "cause." The efficient proximate cause doctrine applies only in situations where multiple "causes" contribute to a loss. In this case, there was earthquake damage and possibly settling all which destroyed the Thomas home. The efficient cause of the loss, however, was the crack in the slab which happened during the earthquake. Thus, the loss is covered, and Farmers' summary judgment should be denied.

## II.   THE REASONABLE EXPECTATIONS DOCTRINE DOES NOT PERMIT FARMERS TO CONTRACT AROUND THE EFFICIENT PROXIMATE CAUSE DOCTRINE.

Farmers claims its policy contracts around the efficient proximate cause doctrine. But this argument was also rejected in *Kelly* which notes cases finding that a policy provision drafted to circumvent efficient proximate cause doctrine conflicts with reasonable expectations of parties and is unenforceable; that a "property insurer may not limit its liability by contracting around efficient

proximate cause doctrine, since the statutory and judicial law of this state make the insurer liable whenever a covered peril is the 'efficient proximate cause' of the loss, regardless of other contributing causes"; and that parties may not contract around efficient proximate cause doctrine. *Kelly* at 1298–99.  While the *Kelly* court notes that *Shirey* appears to suggest that contracting around the efficient proximate cause doctrine is permissible, it found the exclusions did not circumvent the efficient proximate cause doctrine, because the policy language did not "explicitly and specifically disclaim coverage for losses that arise from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred." *Id*. at 1300. Farmers' policy still does not have that language.

In *Duensing v. State Farm Fire & Casualty Co.*, 2006 OK CIV APP 15, 131 P.3d 127, the court found State Farm adequately contracted around the efficient proximate cause doctrine for the earth movement exclusion, but not for the settling exclusion.  As to the settling exclusion, the court found the lead in was ambiguous and thus applied the reasonable expectations doctrine.

Insurer's "consisting of" argument is identical to that made by the insurer in a mold coverage dispute in *Kelly v. Farmers Insurance Company, Inc.*, 281 F.Supp.2d 1290. There the Court disagreed that the policy language "consisting of" was unambiguous, because "consisting of" implied mold was a loss in and of itself, and the policy explicitly identified mold as a "peril," which the court defined as "the cause of a loss to person and property." *Id*. at 1298. To contract around the doctrine, the policy provision must explicitly and specifically disclaim coverage for losses arising from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred. *Kelly*, supra. Because the provision did not do so and there was evidence that two perils combined to produce the loss, the *Kelly* court concluded that the policy

did not circumvent the efficient proximate cause doctrine and that a question of fact existed regarding the proximate cause of the loss. *Id.* at 1300.

The *Duensing* court found the policy analysis made in *Kelly* persuasive, and found the policy language when applied to "settling" is ambiguous.[14] In this case, as in *Duensing* and *Kelly*, there may be evidence of more than one possible concurring cause for the Thomases' loss, e.g., the earthquake and erosion. Because there are disputed issues of fact in this case regarding proximate cause, summary judgment should be denied.

### III.   THE REASONABLE EXPECTATIONS DOCTRINE.

Unlike most policies, this policy covered earth movement and settling because the Thomases purchased earthquake coverage. In *Broom v. Wilson Paving & Excavating, Inc.*, 2015 OK 19, 356 P.3d 617, the CGL policy was issued to an excavating company, which had an earth movement exclusion. The insurer claimed there was no coverage, but the Oklahoma Supreme Court concluded "that it is highly unlikely that Wilson Paving, a company whose business involves "excavation, tunneling, underground work [and] earth moving," would have purchased the policy with knowledge that it would not cover losses to property or injuries to persons other than employees due to man-made earth movement. *Id.* at 633. As Wilson Paving pointed out in its Motion to Reconsider, "[i]f this exclusion applies to injury related to excavation of ditches or any excavation or paving work, then Wilson Paving paid $34,394.00 for no insurance coverage because all of its operations necessarily 'arise out of, are caused by, result from, contribute to, are

---

[14] Duensing said: "Because the lead-in clause to paragraph 1 in this case does not have the same or similar language as the lead-in clause to paragraph 2, which we previously decided clearly and unambiguously circumvents the doctrine, we conclude that paragraph 1 of the Losses Not Insured section of the Policy does not avoid application of Oklahoma's efficient proximate cause doctrine."

aggravated by, or are related to ... movement of land, earth or mud.' " *Broom v. Wilson Paving & Excavating, Inc., supra,* at ¶ 44, 356 P.3d 617 at 633. Similarly, in this case, the Thomases purchased earthquake coverage so as to be insured for settling and earth movement caused by earthquakes. The *Broom* court held that only natural earth movement was excluded, so the policy was not a sham.

In this case, it is undisputed the earthquake caused the slab to crack. Farmers may not avoid its duty under the policy by claiming the damage is excluded from coverage. The excluded causes of loss do not include earthquake:

> For purpose of this **earthquake** endorsement only, **SECTION I – PROPERTY, UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE** is modified as follows:
> ***
> **B. Excluded Causes of Loss or Damage,** the following excluded caused of loss or damage to do not apply to this **earthquake** endorsement:
> 1.  **Earth Movement. Earth movement** does not include **earthquake;**
> 29. **Collapse. Collapse** does not include **earthquake;**
> 34. **Movement, settling, cracking, bulging, shrinking, heaving or expanding.** This exclusion does not include **movement, settling, cracking, bulging, shrinking, heaving or expanding** if the result of **earthquake.**
>
> [Doc. #38, Ex. 1, Farmers 839-40].

The exclusions do not apply when there is an earthquake endorsement.

If earth movement which is the hallmark of an earthquake is not covered, then the policy endorsement is a sham. Consequently, the policy endorsement must be read to cover earth movement because it is not an excluded cause of loss, it is not an uninsured cause of loss, and earthquakes are a covered peril. If an insurance policy's language is reasonably open to two constructions, the one more favorable to the insured will be adopted.[15] Words of inclusion are

---

[15] *Aschenbrenner v. U. S. & Guar. Co.,* 292 U.S. 80, 84-85, 54 S. Ct. 590, 592-93, 78 L. Ed. 1137 (1934); *Spears v. Shelter Mut. Ins. Co.,* 2003 OK 66, ¶5, 73 P.3d 865, 868.

liberally construed in favor of coverage and the insured, while words of exclusion are strictly construed against the insurer. See, e.g., *McDonald v. Schreiner*, 2001 OK 58, ¶6, 28 P.3d 574. Insurance contracts are adhesion contracts.[16] It is the insurer's responsibility to draft clear provisions of exclusion. *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, ¶6, 148 P.3d 832, 835. Exclusions exempting certain specified risks are construed strictly against the insurer. *Aetna Ins. Co. v. Zoblotsky*, 1971 OK 20, 481 P.2d 761, *Continental Casualty Co. v. Beaty*, 1969 OK 89, 455 P.2d 684. It is up to Farmers to prove that its exclusion applies.[17]

The Oklahoma Supreme Court has stated:

"Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy." *Spears v. Shelter Mut. Ins. Co.,* 2003 OK 66, 73 P.3d 865, 868.

In [*Max True Plastering Co. v. USF & G Co.,* 1996 OK 28, 912 P.2d 861], we adopted the doctrine of reasonable expectations. This doctrine evolved as an interpretive tool to aid courts in discerning the intention of the parties, *Id.* at 864, when the policy language is ambiguous or when an exclusion is "masked by technical or obscure language" or "hidden in a policy's provisions." *Id.* at 870. Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the

---

[16] *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, ¶7, 912 P.2d 861, 864 ("An adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected on a 'take it or leave it' basis without opportunity for bargaining-the services contracted for cannot be obtained except by acquiescing to the form agreement. Insurance contracts are contracts of adhesion because of the uneven bargaining positions of the parties." (footnotes omitted)

[17] Here the Farmers' policy is an all risk policy, which means it covers risks unless there is an exclusion. The policy states: "We insure accidental direct physical loss or damage to that property described in Section I. . ." This places the burden on Farmers to show an exclusion applies.

insured would have understood it to mean. *Id*. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy.

We made it clear in Max True Plastering Co., supra, that if an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose. After Max True Plastering Co., supra, unclear or obscure clauses in an insurance policy will not be permitted to defeat coverage which is objectively reasonably expected by a person in the position of the insured.

*Id*.

The reasonable expectations doctrine applies to ambiguous contract language or to exclusions which are masked by technical or obscure language or which are hidden in a policy's provisions. *Max True Plastering Co.* at 870. It is reasonable for the Thomases to believe they had earthquake coverage for the damage caused to their home by an earthquake.

In this case, not even the adjuster could read the policy correctly, as he admitted that settlement caused by earthquake was covered, as was damage to the exterior walls.

Q:    Would you agree with me if the settling is caused by the earthquake, it's covered?
A:    Settling is not covered, no matter how caused, per the policy.
[Ex. 3, 119:5-8]
Q:    Mr. Young, I'm handing you what we've marked as Exhibit No. 6. Would you identify that for the record, please.
A:    Earthquake endorsement.
Q:    And this endorsement was endorsed onto Miss Thomas's homeowner's policy; correct?
A:    Correct.
Q:    Middle of the page, under "Uninsured of loss or damage," do you see that?
A:    Yes, sir.
Q:    It says "Excluded causes of loss or damage. The following excluded causes of loss or damage do not apply to this earthquake endorsement. Earth movement, collapse, movement, settling, cracking, bulging, shrinking, heaving or expanding. This exclusion does not include movement, settling, cracking, bulging, shrinking, heaving or expanding if the result of earthquake."
A:    Correct.
Q:    Does that not mean that if there's settling caused by an earthquake that it would be covered?
A:    Exactly. We allow for coverage of the area affected by the earthquake.
Q:    But you just testified a few moments ago that settling is not covered regardless of the cause?
A:    I misspoke.
[Ex. 3, 119:13-25 and 120:1-16]

Certainly, this shows the exclusions relied upon by Farmers are hidden and obscure, and are contrary to the reasonable expectations of the Thomases.

Generally, the general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, determines the insurance carrier's liability, and the insured's rights under the contract by identifying what risks are covered and excluded by the policy.[18] Any exclusions to general coverage:

> are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.[19]

Since the policy endorsement can be reasonably read more than one way, it is ambiguous and summary judgment is improper.[20]

## IV.   AFTER ACQUIRED EVIDENCE IS IRRELEVENT.

Farmers improperly seeks to bolster its denial of Mr. and Mrs. Thomas' claims by statements contained in the Thomas' expert's report. But this is not evidence relied upon when Farmers denied the claim, and it is not permitted to make up new reasons now.  In *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105, and *Newport v. USAA*, 2000 OK 59, 11 P.3d 190, the Oklahoma Supreme Court ruled that any and all *after acquired evidence* is inadmissible at trial as to the insurer's reasonableness in failing to follow Oklahoma law and in its refusal to pay Plaintiff's claim.  Farmers failed to follow Oklahoma law in the investigation and evaluation

---

[18] *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, 812 P.2d 372, 377.
[19] *Id.* (footnotes omitted).
[20] *Yaffe Companies, Inc. v. Great Am. Ins. Co., Inc.*, 499 F.3d 1182, 1190 (10th Cir. 2007).

of Mr. and Mrs. Thomas' claim. *See Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105. Farmers is now limited to the reasons stated in its denial letter in defense of this action. *Id.*

When presented with a claim by its insured, an insurer **"must conduct an investigation reasonably appropriate under the circumstances. . ."** *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109. Farmers was obligated to conduct a reasonably appropriate investigation. Instead, Farmers closed its file. Closing a file or deactivating it without investigation creates a triable bad faith issue. *Watson v. Farmers Ins. Co., Inc.*, 23 F.Supp.3d 1342 (N.D. Okl. 2014).

There is a question whether Farmers acted reasonably in denying the claim. The reasonableness of its decision to deny the claim can only be ascertained by analyzing the facts Farmers reviewed before denying the claim. Facts that were not before Farmers during the pendency of the claim are irrelevant under *Buzzard* and *Newport*.

## V.   FARMERS' RELIANCE ON *GERLICHER* IS MISPLACED.

Farmers relies on a Court of Civil Appeals case which is not precedential, and the facts are sufficiently different from this case. *Nat'l American Ins. Co. v Gerlicher Co., LLC*, 2011 OK CIV APP 94, 260 P.3d 1279. The *Gerlicher* policy excluded coverage for "bodily injury", "property damage", "personal injury and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part. . ."exterior insulation and finish system". *Id.* at 1283. Here, the Farmers policy covers earthquakes--which is defined as shaking or trembling of the earth (e.g., earth movement)--and covers earth movement and settling caused by earthquake. The evidence shows that the house was damaged when the earthquake broke the slab. The damage is covered, since the cause of the damage was the earthquake--a covered cause of loss.

17

CONCLUSION

There are disputed facts and inferences which preclude summary judgment.

Respectfully submitted,

CLANCY & THOMPSON, PLLC

    /s/ Kate D. Thompson
Kate D. Thompson, OBA #20991
Timothy P. Clancy, OBA #14199
5801 E 41st Street, Suite 710
Tulsa, OK 74135
918-494-0007 (Telephone)
918-515-7555 (Facsimile)
Attorneys for Plaintiffs
Email: kate@ctlawtulsa.com
          tim@ctlawtulsa.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Phil Richards
Kelsie Sullivan
Casper DenHarder

    /s/ Kate D. Thompson

18